# United States District Court
Eastern District of Michigan

| | |
|---|---|
| United States of America | **Memorandum Opinion and**<br>**ORDER RE: APPOINTED COUNSEL** |
| v. | |
| Phillip Blevins | Case Number: 08-20339 |
|     Defendant | |

This matter is before the court for appointment of counsel for defendant Blevins (D-1). By informal request, counsel Todd Perkins who was retained by defendant requests to be continued as court appointed counsel. The AUSA concurs. The court believes that both attorneys are acting in good faith in an effort to streamline the process and ultimately save time and expense. However, for the reasons discussed in this opinion, the court declines to grant that request. The court does grant defendant's request for court appointed counsel and enters an order appointing the Federal Defenders Office. The court noted on the record and on the form order that the selection of counsel should be left to FDO in the ordinary course of its policy and procedures. This memorandum opinion sets forth the court's reasoning and supplements the statements on the record.

*Background*

On or about June 10, 2008, the Grand Jury returned an indictment. With the exception of defendant Cynthia Crump who is represented by the Federal Defender, all defendants are represented by retained counsel. Defendant is the lead defendant and faces charges of bank fraud and conspiracy related to sales of foreclosed properties. Arraignment was set for 7/6/09. Defendant Blevins appeared and indicated that he was seeking court appointed counsel. The arraignment was adjourned to July 10, 2009. Later on July 6, attorney Todd Perkins stopped by

the court and indicated that he was seeking to be appointed.

At the time set for arraignment, AUSA Reynolds appeared and requested that attorney Todd Perkins, who was also in court, be appointed to represent Mr. Blevins. She stated that attorney Perkins had been retained by Mr. Blevins during the pre-indictment period. He had participated in discussions with her. However, there is no pending Rule 11 plea agreement known to the court nor any agreed upon resolution. Mr. Perkins is not a member of the CJA panel, has not taken the required training, and is not on the approved list of attorneys. Ms. Reynolds and Mr. Perkins indicated that they had each spoken to the assigned District Judge who had informally referred the matter to the duty magistrate judge regarding the appointment of Mr. Perkins. After considering the argument of counsel and the issues surrounding the case, the court declines to appoint Mr. Perkins.

*Analysis*

The is a multi-defendant fraud case where the indictment alleges that the offenses occurred in 2004 and 2005. Defendant Blevins (D-1) is alleged to have operated as a mortgage loan facilitator. It is alleged that he was the owner of Lion Pride Investments aka Lyon Pride Investments or LPI, and LJ & J Development (LJ&J) and provided false property appraisals and false income information for straw buyers of real properties. Relying on such information in one transaction in January, 2005, First Horizon Bank approved and disbursed some $2,450,000 to defendant Blevins and two other codefendants. In another transaction, Bank of America in August, 2005 approved and disbursed $3,780,000.

These are significant amounts of money and the case appears to be complex. It is likely that substantial attorney time would be required to review and sort out the claims. Thus, counsel Perkins' familiarity with the underlying circumstances would be of benefit to defendant. On the

other hand, the case is new.  One defendant in addition to Mr. Blevins remains to be arraigned. The indictment was returned only a short time ago and it appears that no defendants have pled. There is no trial date, no motions have been filed, and issues of guidelines and other matters remain in play.   The complexity of the case would indicate that an attorney with full knowledge and training in sentencing guidelines and federal evidentiary matters would be most effective in representing defendant.

The purpose of the Criminal Justice Act 18 U.S.C. §3006A is to ensure adequate representation of indigents criminal defendants.  The statute requires that attorneys appointed <u>shall</u> be selected from a panel of attorneys designated or approved by the court.  3006A(b).  Mr. Perkins is not on that panel. The court is not familiar with Mr. Perkins in cases such as this and therefore cannot speak to the adequacy of his representation.  If defendant were convicted, he could raise the issue of ineffective assistance of counsel in a Section 2255 motion for providing him a non-certified lawyer.  In addition, even if Mr. Perkins could represent defendant adequately without panel membership, the court would have to find that no panel attorneys can adequately represent Mr. Blevins.   This the court cannot do.

It is important to consider carefully the request, because it raises some significant issues. The court finds guidance in the opinion in *United States v. Zaccaria*   1997 WL 642985, 1 -4 (W.D.N.Y.,1997).  The proper role of the CJA is to have indigent defendants adequately represented.  The struggle has been to keep true to the letter and spirit of the Act, without allowing counsel to pervert the CJA into a form of "federal fee insurance." *See United States v. Thompson,* 361 F.Supp. 879, 887 (D.D.C.1973), *vacated in part, aff'd. in part without opinion,* 489 F.2d 1273 (D .C. Cir.1974), *and overruled on other grounds by United States v. Hunter,* 394

F.Supp. 997 (D.D.C.1975). The CJA should function first and foremost as a safety valve for needy defendants, and not as a safety net for careless counsel. *See United States v. James,* 301 F.Supp. 107, 141 (W.D.Tex.1969). The CJA itself provides, "[i]f at any stage of the proceedings, ... the court finds that the person is financially unable to pay counsel whom he had retained, it may appoint counsel ... and authorize payment ... as the interests of justice may dictate." 18 U.S.C. § 3006A(c). The Act itself therefore acknowledges that there are certain circumstances which allow for the appointment of CJA counsel despite a defendant's initial representation by retained counsel. But an attorney who fails to make adequate arrangements before accepting representation of a client cannot rely on the CJA to "bail him out." *James,* 301 F.Supp. at 141. There are practical reasons why.

First, if the CJA did take on the function of a federal fee insurance fund, needy defendants could sign an unrealistic retainer agreement with counsel of choice, then let the taxpayers foot the bill for chosen rather than appointed counsel. Instead of the courts choosing counsel from the CJA panel list, defendants could circumvent the District Plan and pick counsel of choice. Such a situation would turn the carefully crafted District Plan into little more than a default mechanism.

A second practical concern, which has been noted in *United States v. Herbawi,* 913 F.Supp. 170 (W.D.N.Y.1996), involves the repercussions which flow from a partial retainer agreement and a motion to withdraw when the retainer runs out. As Magistrate Judge Feldman put it in *Herbawi*:

> "Where a substantial partial retainer is paid to private defense counsel and thereafter exhausted, a subsequent motion by private counsel to be relieved for failure of the defendant to pay the remainder of the agreed upon fee creates an additional and unfair burden on the limited resources of the CJA. A motion made to withdraw after the

>depletion of the defendant's partial, but not insubstantial retainer, eliminates the availability of assets that "otherwise would have been available to help defray the expense of court-appointed counsel." *Id.* at 172 (citation omitted).

Along the same lines of the first two concerns is a third practical reason not to use the CJA as a lawyer's safety net. Opportunistic attorneys who have grown used to the Act's assistance when retainers run out may see an avenue for enrichment in taking a substantial partial retainer up front, then relying on CJA funds to cover the difference. They could then assure themselves of compensation in excess of what they might have made with an initial CJA appointment (and no retainer), since they would have the partial retainer in hand and the more modest CJA funds to look forward to.  In Zaccaria's situation, the court did find the situation "sufficiently unusual and extenuating as to justify relief., citing *Herbawi,* 913 F.Supp. at 172.

Here, there are a number of factors which militate against a denial of the Defendant's request.  First, there is no evidence of the work undertaken by counsel Perkins.  There is no direct request from defendant, either. Unfortunately, neither counsel nor client advised the court of the scope of their retainer arrangement at the arraignment.  Subsequent to *Herbawi*, the *Zaccaria* court stated that magistrate judges in the district are inquiring into the scope of retainer agreements at arraignments as a matter of course, but such was not the case when Zaccaria was arraigned.  The same is true for Blevins.  The second factor militating against the appointment is that justice can be served and potential claims of ineffective assistance minimized by appointment of a qualified panel attorney.  Third, there is no imminent trial.  Fourth, defendant has not expressed a strong preference to continue with his current lawyer.  In addition, there is the issue of fairness to the members of the CJA panel.  These attorneys took the courses, attended the seminars, and have taken many, many cases for the benefit of defendants.  Often,

these cases failed to fully compensate them for the time and effort expended. Where a case has complex white collar crime allegations, which is legally interesting and challenging, with the opportunity for more significant remuneration, it seems unfair to remove this opportunity from them. This would undermine the role of the CJA panel and inhibit membership of highly qualified, well experienced counsel if they knew they were not going to be considered for such cases. Consequently, the court would not be able to utilize their services in other cases.

The safety net of the Act is meant to protect defendants who lack the resources to defend against criminal charges. It has never been, nor should it ever become, a safety valve for defense attorneys who draft shortsighted retainer agreements, knowing that the Act will provide for any shortfalls. Defense attorneys have to plan ahead for the pitfalls which may arise in their relationships with their clients, and must face the consequence of ignoring those pitfalls. The CJA does not and will not provide coverage for lawyers who make bad bargains with their clients. After full consideration of request, and with the belief that both counsel have only the purest motives in making this request, the court must nevertheless deny the request to appoint Mr. Perkins. If the Federal Defenders Office after their review, and perhaps with more information presented to it, decides to appoint Mr. Perkins, the court has no quarrel with that. However, the court declines to treat this defendant differently from others and in a manner inconsistent with the district's plan.

7/10/2009                                          s/Virginia M. Morgan